**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 19-cv-01436-REB-NYW

PTW ENERGY SERVICES, INC.,

      Plaintiff,

v.

MARTIN CARRIERE,

      Defendant.

---

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
AND ORDER ON MOTION TO STAY**

---

Magistrate Judge Nina Y. Wang

      Pending before the court are two motions filed by Defendant Martin Carriere ("Defendant" or "Mr. Carriere"):

      (1)      Motion to Dismiss for *Forum Non Conveniens* ("the Motion to Dismiss") [#14, filed June 19, 2019], and

      (2)      Motion to Stay Discovery ("the Motion to Stay") [#23, filed July 15, 2019].

      The undersigned considers these motions pursuant to 28 U.S.C. § 636(b), the Order Referring Case dated July 9, 2018 [#18], and the Memoranda dated July 9 and July 16, 2019. [#19; #24]. For the reasons stated herein, it is **RECOMMENDED** that the Motion to Dismiss be **GRANTED** and it is **ORDERED** that the Motion to Stay is **GRANTED**.

## BACKGROUND

This case concerns the employment relationship between Plaintiff PTW Energy Services, Inc. ("Plaintiff" or "PTW USA"), an American corporation incorporated under the laws of Delaware and with its principal place of business in Texas, and Defendant, a Canadian citizen resident in Colorado. [#1 at ¶¶ 1–6]. Mr. Carriere initially entered into an agreement ("the Employment Agreement") with Tarpon Energy Services Ltd. ("Tarpon Energy"), a Canadian corporation headquartered in Alberta, on April 7, 2014. [*Id.* at ¶ 11, #1-1 at 2]. Around this time, PTW Energy Services Ltd. ("PTW Canada"), headquartered in Alberta, purchased Tarpon Energy. [#1 at ¶ 12; #14-1 at ¶ 5].

After the acquisition, Defendant's relationship with his employer deteriorated, and on February 12, 2019, Mr. Carriere sent the following email:

> This letter is intended to serve as "Good Reason Notice" under the terms of my employment contract PTW. I respect your decision to reorganize and respectfully request payment of the "Termination Payment" and release from PTW so I can begin the next stage of my career. I offer to stay with the company for a period of up to 30 days to continue to assist with transition if requested.

[#1 at ¶ 26; #14-1 at 14 ¶ 39]. The Parties soon came to disagree about the precise impact of that email and the subsequent obligations under the Agreement. [#1-1 at 11].[1]

---

[1] Plaintiff and Defendant disagree about the particulars of the employment relationship after PTW Canada purchased Tarpon Energy. *Compare* [#1 at ¶ 12 ("Shortly thereafter, due to corporate restructuring, the Defendant's employment was assigned to PTW and he then became employed by PTW."], *with* [#33 at 2 ("[Plaintiff] PTW US was not a party to that employment agreement.") & 3 at n.3 ("While Plaintiff maintains that Carriere was paid by PTW Energy Services, Inc., this is irrelevant. What is relevant and has bearing on this action is the fact that PTW Energy Services, Inc. is not a party to Carriere's employment agreement.")]. The resolution of these issues is not required for this Recommendation and Order, and accordingly this court does not pass on them.

On March 14, 2019, Defendant filed suit to enforce the Agreement against PTW Canada in the Court of Queen's Bench of Alberta, Canada ("the Canadian Action"). [#14-1 at 6]. PTW USA filed this case against Mr. Carriere shortly thereafter on May 20, 2019, seeking declaratory relief establishing that Mr. Carriere resigned from his employment and PTW did not owe any further pay or compensation under the Employment Agreement. [#1 at ¶¶ 25–28, 38–44]. On May 28, 2019, Mr. Carriere filed an Amended Statement of Claim ("Amended Statement") in the Canadian Action in which he added Tarpon Energy as a Defendant. [#14-1 at 24]. The Amended Statement specifically cites PTW USA's filing of this action as further evidence of PTW Canada and Tarpon Energy's bad faith. [*Id.* at 39–40].

In this action, Defendant filed the instant Motion to Dismiss on June 19, 2019. [#14]. Shortly before the scheduling conference held on July 22, Defendant filed the Motion to Stay, seeking to stay all discovery until the Motion to Dismiss was ruled upon. [#23 at 4]. The Motion to Dismiss became ripe with the filing of Defendant's Reply on July 24, 2019 [#33], and the Motion to Stay became ripe on July 21, 2019, also with Defendant's Reply [#26]. On July 31, the court granted leave [#36] for Plaintiff to file a Surreply [#37] to address arguments made in Defendant's Reply. The court now turns to these motions.

## LEGAL STANDARD

Under the doctrine of *forum non conveniens,* a court may order the dismissal of an action over which it declines jurisdiction because the court lacks a mechanism to transfer to the proper forum, typically when the forum is in a foreign country. *Kelvion, Inc. v. PetroChina Canada Ltd.*, 918 F.3d 1088, 1091 (10th Cir. 2019); Charles Alan Wright et al., 14D Fed. Prac. & Proc. Juris. § 3828 (4th ed., Nov. 2018 update). The doctrine is "essentially 'a supervening venue provision,

permitting displacement of the ordinary rules of venue when, in light of certain conditions, the trial court thinks that jurisdiction ought to be declined.'" *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 429 (2007) (quoting *Am. Dredging Co. v. Miller*, 510 U.S. 443, 453 (1994)). "The central purpose of any *forum non conveniens* inquiry is to ensure that the trial is convenient." *Gschwind v. Cessna Aircraft Co.*, 161 F.3d 602, 605 (10th Cir. 1998) (citations and quotations omitted).

Courts apply a two-step threshold test to determine whether a case may be dismissed under the *forum non conveniens* doctrine. *Fireman's Fund Ins. Co. v. Thyssen Min. Const. of Canada, Ltd.*, 703 F.3d 488, 495 (10th Cir. 2012); *Yavuz v. 61 MM, Ltd.*, 576 F.3d 1166, 1174 (10th Cir. 2009). First, there must be "an adequate alternative forum in which the defendant is amenable to process." *Fireman's Fund*, 703 F.3d at 495. Second, the court must confirm that foreign law is applicable. *Id.* "If the answer to either of these questions is no, the *forum non conveniens* doctrine is inapplicable." *Id.*

If these threshold criteria are satisfied, the court proceeds to balance "a range of private and public interest factors." *Yavuz*, 576 F.3d at 1180. The private interest factors include: (1) the relative ease of access to sources of proof; (2) availability of compulsory process for compelling attendance of witnesses; (3) cost of obtaining attendance of willing non-party witnesses; (4) possibility of a view of the premises, if appropriate; and (5) all other practical problems that make trial of the case easy, expeditious and inexpensive. *Id.* Public interest factors include: (1) administrative difficulties of courts with congested dockets which can be caused by cases not being filed at their place of origin; (2) the burden of jury duty on members of a community with no connection to the litigation; (3) the local interest in having localized controversies decided at home;

and (4) the appropriateness of having diversity cases tried in a forum that is familiar with the governing law. *Id.*

Ordinarily, a defendant must bear a "heavy burden" in opposing the plaintiff's chosen forum. *Sinochem*, 549 U.S. at 430. There is normally a "strong presumption in favor of hearing the case in the plaintiff's chosen forum." *Gschwind*, 161 F.3d at 606; *Soo Chong Lee v. Young Life*, No. 18-CV-01421-PAB-KLM, 2019 WL 764549, at *5 (D. Colo. Feb. 21, 2019). This presumption applies with less force if a plaintiff sues outside of its home forum. *Sinochem*, 549 U.S. at 430 ("When the plaintiff's choice is not its home forum, however, the presumption in the plaintiff's favor applies with less force, for the assumption that the chosen forum is appropriate is in such cases less reasonable." (quotation omitted)). But if a defendant seeking dismissal is a resident of the forum, and particularly when the defendant is a natural person and not a large corporate entity with distributed operations, then that fact is accorded significant weight. *See Gschwind*, 161 F.3d at 609 ("It is true that a forum resident should have to make a stronger case than others for dismissal based on *forum non conveniens*."); *In re Cessna 208 Series Aircraft Prod. Liab. Litig.*, 546 F. Supp. 2d 1191, 1195 (D. Kan. 2008) ("[A] defendant who is a forum resident . . . must make a stronger case than others for dismissal based on *forum non conveniens*."). When the parties have entered into a valid forum selection clause that purports to exclusively commit the parties to a forum, that clause should be "given controlling weight in all but the most exceptional cases." *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 60 (2013) (citations and quotations omitted).

In reviewing a trial court's determination on a motion to dismiss for *forum non conveniens*, the Tenth Circuit has adopted a bifurcated approach. First, the court examines the interpretation

of the clause at issue *de novo*, and then examines the court's balancing of the public and private interest factors for an abuse of discretion. *Kelvion*, 918 F.3d at 1092. The court therefore proceeds in the same manner, first interpreting the clause at issue and then proceeding to substantively apply the doctrine and balance the relevant factors.

## ANALYSIS

Though the Parties disagree as to the precise nature of Mr. Carriere's employment, they agree that the forum selection clause in ¶ 9.9 applies.[2] The Tenth Circuit and other courts have "frequently classified forum selection clauses as either mandatory or permissive." *Excell, Inc. v. Sterling Boiler & Mechanical, Inc.*, 106 F.3d 318, 321 (10th Cir. 1997). A mandatory forum selection clause must contain "clear language" evincing that intent of the parties. *Id.* Generally, where venue is specified in a forum selection clause with "mandatory or obligatory language, the clause will be enforced; but where only jurisdiction is specified, the clause will generally not be enforced unless there is some further language indicating the parties' intent to make venue exclusive." *K & V Sci. Co. v. BMW*, 314 F.3d 494, 499 (10th Cir. 2002) (collecting cases); *Xantrex Tech. Inc. v. Advanced Energy Indus., Inc.*, No. Civ-A-07-CV-02324-WYD-MEH, 2008 WL 2185882, at *6 (D. Colo. May 23, 2008) ("Where venue is specified in a forum selection clause with mandatory or obligatory language, the clause will be enforced; where only jurisdiction is specified in a forum selection clause, the clause will generally not be enforced unless there is some

---

[2] Defendant argues both that PTW USA is both bound by the clause but also that it is not a party to the Employment Agreement. *Compare* [#14 at 8–12 (arguing for dismissal based on the forum selection clause)], *with* [#33 at 2 ("PTW US was not a party to that employment agreement.")]. As recognized by Defendant [#14 at 15 n.3], the Agreement clearly applies to subsidiaries of the parent signatory (then Tarpon Energy Services Ltd. and since 2014, PTW Canada) per ¶ 7.1(a), and Defendant has recognized that PTW USA is a subsidiary of PTW Canada in its Corporate Disclosure Statement. [#2 at 1].

further language indicating the parties' intent to make venue exclusive."). Thus, forum selection clauses are permissive unless there is a clear intent to make them mandatory.

Accordingly, the court first considers the clause itself, focusing on the Parties' dispute whether it is mandatory or permissive. The court next considers application of the substantive public and private interests. Ultimately, the court concludes that the forum selection clause is not mandatory, and Defendant has met the demanding burden to justify dismissal.

***Is the Forum Selection Clause Mandatory?*** The essence of the disagreement between the Parties over the forum selection clause is whether it is mandatory, i.e., exclusively committing the Parties to courts in the Province of Alberta, or whether it is permissive, i.e., merely identifying a preferred forum in which the Parties may not challenge jurisdiction. Curiously, neither party directly addresses the law under which ¶ 9.9 of the Agreement should be interpreted. *See generally* [#14; #21; #33; #37]. In similar circumstances, the *Kelvion* court "assume[d], without deciding, that Canadian law would apply similar contractual principles as our own." *Kelvion*, 918 F.3d at 1092 n.2 (10th Cir. 2019) (noting the defendant's citations to *Sabean v. Portage La Prairie Mutual Insurance Co.*, [2017] 1 S.C.R. 121, 127 (Can.), and *Z.I. Pompey Industrie v. ECU Line N.V.*, [2003] 1 S.C.R. 450, 462–63 (Can.)). This court proceeds accordingly.

The court begins with the text of the clause, interpreting it as it would any contractual provision, *id.* at 1092:

> 9.9 This Agreement shall be construed and enforced with, and the rights of the parties shall be governed by, the laws of the Province of Alberta. Each of the parties hereto irrevocably attorns to the jurisdiction of the courts of the Province of Alberta. [#1-1 at 11].

Citing to *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 60 (2013), Defendant argues that Plaintiff's choice of forum is entitled to no weight and that the presence of

a valid, mandatory forum selection clause requires the dismissal of the case. [#14 at 9–10]. Plaintiff counters that the forum selection clause is not exclusive to Albertan courts and courts applying *Atlantic Marine* have distinguished that case as applicable only to mandatory and exclusive forum selection clauses. [#21 at 5 ("Federal courts have routinely determined that *Atl. Marine*'s legal principle only applies to mandatory forum selection provisions.")]. In Reply, Mr. Carriere contends that courts have found that language identical to that now in dispute— "irrevocably attorns"—constitutes a mandatory forum selection clause and further that any ambiguity should be construed in favor of him, not PTW USA. [#33 at 6-8].

Here, the court finds the clause to be permissive. Nothing in the text of the clause indicates that disputes are to be *exclusively* brought in Albertan courts. "Irrevocably," an adverb modifying "attorn," refers to ability of the parties to subsequently alter the attornment to Albertan courts, it has nothing to do with the scope of the attornment. To "attorn" means "to transfer (money, goods, etc.) to another." Attorn, Black's Law Dictionary (11th ed. 2019). The court interprets this phrase to mean that the parties agree that suit may be brought in Alberta and that their consent to such suit is irrevocable for the term of the Agreement. But there is no express limitation establishing that the courts of Alberta are exclusive of any other jurisdiction. Nor is there any implicit meaning of either word that unambiguously confers exclusivity. The language is simply not sufficiently clear to indicate a mandatory, exclusive reservation to Albertan courts under *Excell*.

In so finding, this court notes that several courts have interpreted "irrevocably attorn[]," and that those courts have interpreted the phrase as mandatory or permissive in roughly equal number. *Pro Step Mktg., Inc. v. Real Estate Webmasters, Inc.*, No. 5:16-CV-00072-RLV-DSC, 2017 WL 3595489, at *6 (W.D.N.C. Aug. 21, 2017) (collecting cases). But the court finds that

the majority of cases which have held that the forum selection clause is mandatory are distinguishable from the present case.

For example, both Plaintiff and Defendant cite *Sick Kids (Need) Involved People of New York, Inc. v. 1561599 Ontario, Inc.*, No. 15 CIV. 3756 RWS, 2015 WL 5672042, at *1 (S.D.N.Y. Sept. 25, 2015). In that case, the court found that the forum selection clause was mandatory. *Id.* at *3. The clause read, in relevant part, "each of the parties hereto *irrevocably attorns to the exclusive jurisdiction* of the courts of the Province of Ontario without regard to conflicts of laws principles." *Id.* at *2 (emphasis added). The court agrees that such language is clearly mandatory, but here there is no "exclusive jurisdiction" clause, and *Sick Kids* is therefore distinguishable.

*Pro Step*, which Defendant heavily relies on, is directly contrary to this court's interpretation. 2017 WL 3595489, at *6 ("Thus, the Court interprets the phrase 'irrevocably attorn' as establishing intent on the part of both parties to submit all disputes arising from the agreement to the courts of the Province of British Columbia, and is satisfied the use of the phrase 'irrevocably attorn' is language making jurisdiction in British Columbia exclusive."). Defendant further argues that the clause is ambiguous and should be construed in favor of the movant. [#33 at 8]. The court is not persuaded by these arguments for several reasons.

First, the clause cannot be both ambiguous enough to be construed against the drafter and sufficiently clear to evince the parties' intent to exclusively bind themselves to the identified court. Second, to the extent this Recommendation and the *Pro Step* court's decision are in tension, the court respectfully disagrees with the *Pro Step* court. There is nothing about the revocability of the attornment which affects the exclusivity of that act. The court does not see a basis to interpret "irrevocably" as "demonstrating a sense of exclusivity and urgency." 2017 WL 3595489 at *7.

Finally, there is a long history and general trend of finding that clauses which merely specify the jurisdiction of litigation but do not purport to limit the parties to that jurisdiction are permissive and not mandatory. *K & V Sci. Co. v. BMW*, 314 F.3d 494, 499 (10th Cir. 2002) (collecting cases). *Cf. BluSky Restoration Contractors, LLC v. Whitman-Greenhill, LLC*, No. 18-cv-00632-REB-NYW, 2018 WL 3804098, at *2, *3 (D. Colo. Aug. 10, 2018) (concluding that a forum selection clause which provided that venue "shall be" in Colorado was mandatory). Now that the court has concluded the clause is permissive, the court turns to the significance of that fact in light of *Atlantic Marine*.

***Does the Permissive Nature of the Forum Selection Clause Matter after* Atlantic Marine*?*** The Supreme Court's decision in *Atlantic Marine* stated that a valid forum selection clause should be enforced in all but the most unusual circumstances. 571 U.S. at 64. The decision did not purport to limit its applicability to *mandatory* forum selection clauses. *See id.* However, the lower courts have interpreted it as such. *See, e.g.*, *Lyon v. First Choice Loan Servs., Inc.*, No. 15-CV-00269-CMA-NYW, 2015 WL 3956366, at *2 (D. Colo. June 29, 2015); *Waste Mgmt. of La., L.L.C. v. Jefferson Par.*, 48 F. Supp. 3d 894, 909 (E.D. La. 2014).

The court is persuaded by this interpretation of *Atlantic Marine* because applying *Atlantic Marine*'s presumption of enforcement to a merely permissive forum selection clause would exceed what the parties bargained for in entering into the contract. *See Karl W. Schmidt & Assocs. v. Action Envtl. Sols.,LLC*, No. 14-cv-00907-RBJ, 2014 WL 6617095, at *6 (D. Colo. Nov. 21, 2014); ); *Waste Mgmt.*, 48 F. Supp. 3d at 909 ("Giving a permissive clause controlling weight, however, would be antithetical to 'holding parties to their bargain.' Essentially, a permissive clause would be transformed into a mandatory clause anytime a defendant raised the doctrine of *forum*

*non conveniens*.").  Such an application would defeat any distinction between permissive and mandatory clauses, the reasonable expectations of contracting parties who sought to engage in a permissive forum selection clause, and effectively prevent contracting parties from ever non-exclusively designating a forum.  Accordingly, because the clause at issue in this case is permissive, the court does not apply *Atlantic Marine* and continues along the traditional *forum non* analysis.

   ***The Two Threshold Questions.***  As noted above, there are two threshold questions before the court proceeds to apply the public/private balancing test.  The court first considers whether there an adequate alternative forum in which the Defendant is amendable to process, and second, whether foreign law applies.  *Yavuz v. 61 MM, Ltd.*, 576 F.3d 1166, 1172 (10th Cir. 2009).  The court finds that both of these questions are answered in the affirmative.  Defendant seeks transfer to the alternate forum, and no party argues that Canadian courts are in any way inadequate to adjudicate this dispute.  *Gschwind*, 161 F.3d at 606 (agreeing to be subject to suit in a specific forum "is generally enough to make the alternative forum available" and collecting cases).  Indeed, a Canadian court is already adjudicating this dispute in the Canadian Action.  In addition, the forum selection clause, while permissive in vesting jurisdiction, unambiguously requires the application of Canadian law, and so the second prong is satisfied as well. [#1-1 at 11].  Accordingly, the court now proceeds to consider the public and private interests at play.

   ***The Private Interest Factors.***  In considering the private interest factors at issue, a court considers: (1) the relative ease of access to sources of proof; (2) availability of compulsory process for compelling attendance of witnesses; (3) cost of obtaining attendance of willing non-party witnesses; (4) possibility of a view of the premises, if appropriate; and (5) all other practical

problems that make trial of the case easy, expeditious and inexpensive.  *Yavuz*, 576 F.3d at 1180.

While most of these factors weigh against dismissal, the fifth and final factor strongly weighs in

favor of dismissal and the court concludes that the private interest factors as a whole support

dismissal.

The court finds that Colorado appears to have some connection with Defendant's

performance under the contract and further finds that Defendant is subject to general jurisdiction

in this forum where he is resident.  These connections weigh against dismissal.  Dismissal on *forum

non* from the defendant's resident forum that has a connection to the litigation is a high bar.

*Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1229 (9th Cir. 2011) (holding that

plaintiff was entitled to a strong presumption against dismissal when suit brought in defendant's

home forum which had substantial connection to the case); *Norex Petroleum Ltd. v. Access Indus.,

Inc.*, 416 F.3d 146, 155 (2d Cir. 2005) (holding that bringing suit in defendant's home forum is

due "substantial deference" when done to ensure jurisdiction over the defendant); *see also Reid-

Walen v. Hansen*, 933 F.2d 1390, 1395 (8th Cir. 1991) ("In this unusual situation, where the forum

resident seeks dismissal, this fact should weigh strongly against dismissal. . . . [I]t will be the rare

case indeed when a case filed in the federal district where the defendant resides and in the home

forum of the plaintiff is dismissed on the ground of *forum non conveniens*.").  The court finds that

these factors weigh in favor of Plaintiff's chosen forum given Defendant's nexus to Colorado.

Plaintiff alleges that Defendant executed and performed under the contract in Colorado.

[#1 at ¶¶ 35–36].  Defendant counters that more relevant information and witnesses will reside in

Canada but admits that he moved to Colorado twice to perform work for companies affiliated with

Plaintiff and PTW Canada.  [#14 at 4, 5].  Colorado thus has a substantial connection with the

conduct underlying the litigation. The court acknowledges that there will be many witnesses and documents located out of the state, but those documents are not necessarily located in the alternate forum, they could just as plausibly be located in the other locations where Plaintiff worked across the United States. [#14-1 at ¶ 6 (Defendant's declaration noting that "Although residing in Colorado, I was required to travel extensively throughout the United States, and was rarely in Colorado for work."). That factor does not necessarily weigh against the present forum. However, the court finds that there are significant practical challenges that would make the case inefficient and difficult to try in this District.

First, the pendency of the first-filed Canadian Action will necessarily result in more than one court interpreting the same operative terms of the contract in dispute and making factual findings which will likely create multiple issues related to preclusion as the cases proceed in parallel. The court and the Parties will face the constant spectre that matters pending before it may become moot in light of the Canadian Court's decision on the same or similar matters, and the Parties will have to address those issues, along with the substantive disputes, in this court. In such circumstances, the principle of international comity "requires that domestic courts take reasonable steps to prevent potential conflicts from ripening into overt confrontations with foreign tribunals." *Ensign-Bickford Co. v. ICI Explosives USA Inc.*, 817 F. Supp. 1018, 1032 (D. Conn. 1993).

This problem is more than mere duplication—differences in the discovery processes available between Canadian and American courts may also result in unique burdens. Unless the Parties otherwise agree, discovery across borders typically requires the need to issue Letters of Request, issue subpoenas through the Hague Convention, or to seek other relief for international discovery under 28 U.S.C. § 1782 which will delay the action and increase the costs for all parties.

As PTW USA notes in its Surreply, it is not a party in the Canadian Action, [#37 at 4], and so different documentary obligations may be triggered. Not only may the Parties be subject to different discovery in the two jurisdictions, but each court may issue a ruling with potential effects on the other considering different evidence. Although the court is not considering the argument under comity or the first-filed rule as the parties argue but rather under the *forum non conveniens* analysis, the potential for conflicts with the Canadian Court and the attendant legal and practical issues will increase the burden on all Parties and the court and put this court in potential conflict with the Canadian Court—on issues implicating Canadian law no less. *Cf. Hislop v. Paltar Petroleum Ltd.*, No. 17-CV-02371-RBJ, 2018 WL 5014123, at *8 (D. Colo. Oct. 16, 2018).

Such efficiency concerns often motivate courts to stay discovery when a parallel foreign proceeding is likely to have a substantial or controlling effect on the present case. *In re Application of Alves Braga*, 789 F. Supp. 2d 1294, 1310 (S.D. Fla. 2011) (quoting *Miccosukee Tribe of Indians of Fla. v. South Fla. Water Mgmt. Dist.*, 559 F.3d 1191, 1198 (11th Cir. 2009)). The same efficiency concerns motivate the court here and lead to the inevitable conclusion that continuing to adjudicate this case in parallel detracts from, rather than promotes, judicial economy and substantially increases the costs for both the Parties and third-party witnesses and custodians of relevant evidence.

**The Public Interest Factors.** Although not all the public interest factors favor dismissal, the court concludes that the public interest factors favor dismissal when viewed in context of the unique challenges inherent in continuing with the present matter in parallel to the Canadian Action. Courts are directed to consider the local interests in light of the assumed-slight connection to the forum—e.g., "the burden of jury duty on members of a community with no connection to the

litigation" and "the local interest in having localized controversies decided at home" *Yavuz*, 576 F.3d at 1180—but as already noted, Colorado has a connection to the underlying facts and these factors do not weigh towards dismissal. The remaining factors have some application: the administrative difficulties considering the burden on the court and the appropriateness of having diversity cases tried in a forum that is familiar with the governing law. *Yavuz*, 465 F.3d at 426. The court finds that the docket congestion in Colorado is not dispositive, and it is fully confident of its ability to adjudicate this case in a timely fashion. The court therefore focuses on the latter factor, the appropriateness of having diversity cases tried in a forum that is familiar with the governing law.

First, the court notes that the fact of the existence of the pending, first-filed Canadian Action is not itself dispositive of this issue. The presence of parallel litigation in a foreign forum does not necessarily affect the *forum non conveniens* analysis. *China Trade & Dev. Corp. v. M.V. Choong Yong*, 837 F.2d 33, 36 (2d Cir. 1987) ("Parallel proceedings on the same *in personam* claim should ordinarily be allowed to proceed simultaneously, at least until a judgment is reached in one which can be pled as res judicata in the other." (formatting altered, quotations omitted)). Courts typically permit parallel foreign litigation outside of the bankruptcy context. *Royal & Sun All. Ins. Co. of Canada v. Century Int'l Arms, Inc*., 466 F.3d 88, 92 (2d Cir. 2006) ("Generally, concurrent jurisdiction in United States courts and the courts of a foreign sovereign does not result in conflict."). But even if this factor is not itself dispositive, as discussed above, the presence of a parallel foreign proceeding concerning the same legal issues does raise a host of practical challenges which would fatally undermine the efficient resolution of the matter before the court.

Second, the court will necessarily apply foreign law in this action, as the Agreement expressly provides that "[the] Agreement shall be construed and enforced with, and the rights of the parties shall be governed by, the laws of the Province of Alberta."  The need to apply foreign law "point[s] towards dismissal."  *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 260 & n.29 (1981) (collecting cases); *Ponder v. Prophete*, No. 16-2376-CM, 2019 WL 3430589, at *4 (D. Kan. July 30, 2019) (finding that the applicability of foreign law "weighs strongly in favor of dismissal"). Applying foreign law is a task for which foreign courts are far better suited and in which those courts have a more significant interest in seeing the just administration of their own laws.  *Hislop v. Paltar Petroleum Ltd.*, No. 17-CV-02371-RBJ, 2018 WL 5014123, at *8 (D. Colo. Oct. 16, 2018) (noting Australian courts' "strong interest" in adjudicating Australian law); *Archangel Diamond Corp. Liquidating Tr. v. OAO Lukoil*, 75 F. Supp. 3d 1343, 1381 (D. Colo. 2014) (same, Russia).  The corollary to Canada's interest in applying its own laws is this court's unfamiliarity with Canadian law and the administrative burdens inherent in applying unfamiliar law.  *Vivendi SA v. T-Mobile USA Inc.*, 586 F.3d 689, 696 (9th Cir. 2009) (holding district court did not err in "conclud[ing] its lack of familiarity with foreign law counseled in favor of dismissal").  This point counsels in favor of finding that the public interest factors weigh in favor of dismissal.  *Needham v. Phillips Petroleum Co. of Norway*, 719 F.2d 1481, 1484 (10th Cir. 1983) ("Inasmuch as the court properly determined that American law was not the ruling law in the case and that Norwegian law was applicable, the district court properly dismissed the case under the doctrine of *forum non conveniens . . .*"); *Meijer v. Qwest Commc'ns Int'l, Inc.*, No. Civ.09-cv-00162-REB-KLM, 2010 WL 1348668, at *8 (D. Colo. Mar. 31, 2010) ("[T]his court has no reason to believe that it is better

equipped to deal with numerous Dutch statutory provisions than the Dutch court is to deal with one American statute.").

That said, the fact that foreign law applies alone is not sufficient to justify dismissal under this doctrine. *Rivendell Forest Prod., Ltd. v. Canadian Pac. Ltd.*, 2 F.3d 990, 994 (10th Cir. 1993) ("[E]ven if foreign law applies, a district court would abuse its discretion if the record does not contain substantial reasons, other than the choice-of-law issue, why the foreign forum is more convenient."). Indeed, given that the applicability of foreign law is also a threshold question to balancing the public and private factors, it would be plainly incorrect to accord it controlling weight. *See, e.g.*, *Diamond Corp. Liquidating Tr. v. Lukoil*, 812 F.3d 799, 804 (10th Cir. 2016) (noting the application of foreign law's status as a precondition to the public/private balancing test). However, neither is this element irrelevant in the context of the applicability of Canadian law and the pending Canadian Action.[3]

Weighing the public and private factors, the court finds that dismissal under the doctrine of *forum non conveniens* is warranted as both the public and private factors weigh against

---

[3] The court pauses to address the Parties' arguments over whether the Canadian Action takes precedence as the first-filed action. Defendant contends that the court should defer to the Canadian Action as the first-filed. Plaintiff disagrees, arguing that it fails because PTW USA, despite being Defendant's employer, is not a party to the Canadian Action. [#37 at 2–5]. While Plaintiff is correct that PTW USA is not a party to the Canadian action, this court respectfully disagrees that it necessarily leads to the conclusion that this action should continue. There are at least three potential results of the Canadian Action considering this fact. Either the Canadian Action proceeds on the merits to a final adjudication because the court finds that the defendants joined in that action are Mr. Carriere's employers, or the matter is dismissed because Mr. Carriere has brought suit against the wrong entities, or PTW USA is joined or intervenes as a defendant in that action. In any one of these outcomes, PTW USA has not been prejudiced in the court declining jurisdiction here and benefits from the non-duplication of the significant costs and fees associated with international discovery in a parallel proceeding. The availability of a ready and satisfactory alternative vehicle or adjudicating these issues counsels strongly in favor of dismissal because none of the costs of this case are necessary to resolve the issue presented.

Plaintiff's chosen forum. The court finds that proceeding in the pending Canadian Action represents the more efficient and economical use of judicial resources considering the nexus the case shares with Canada, the need to apply Canadian law, and the myriad practical difficulties and inefficiencies involved in parallel litigation with the Canadian Action on substantively the same issue which would set this court on a collision course with the Canadian Court. The court recommends denying the Motion to Dismiss on that basis. Accordingly, the court also grants the Motion to Stay pending a ruling on the Motion to Dismiss given its consideration that the Motion to Dismiss should be granted.

*An Alternate Basis for Dismissal.* Even if the court did not determine that dismissal on the basis of *forum non conveniens* was proper, the court would still recommend declining jurisdiction over this case under the court's inherent discretion to decline jurisdiction over otherwise justiciable declaratory judgment claims. Because the only claim in this case is one for declaratory judgment, declining to exercise jurisdiction would have the same effect as dismissal under Defendant's *forum non conveniens* motion, and for largely the same reasons, the court recommends that as an alternative course of action.

Courts have the discretion to hear declaratory judgment claims, and a trial court may *sua sponte* consider the appropriateness of such claims even if not raised by either party. *Peck v. Asset Mgmt. Assocs., LLC*, Civ. No. 3:17-cv-2923-N, 218 WL 3455511, at *3 (N.D. Tex. July 18, 2018); 10B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2759 (4th ed. 2018). Courts have the discretionary authority to adjudicate claims for declaratory judgment pursuant to the Declaratory Judgment Act of 1934 which provides, in relevant part, that "any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other

legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (emphasis added).[4] The use of 'may' vests the courts with "unique and substantial discretion" to hear actions for declaratory judgment even if those actions are otherwise justiciable. *United States v. City of Las Cruces*, 289 F.3d 1170, 1183 (10th Cir. 2002); *see also State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir. 1994) ("[T]he district court is not obliged to entertain every justiciable declaratory claim brought before it.").

When a court is presented with a declaratory judgment claim regarding an issue that is already the subject of a parallel proceeding, "the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995). In *Wilton*, the Supreme Court approved of the factors identified in *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491 (1942) when faced with a parallel declaratory judgment action, to wit: "the scope of the pending state court proceeding and the nature of defenses open there. . . . [W]hether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding, whether necessary parties have been

---

[4] Even though this case requires the application of Canadian law, "it is well recognized that the Declaratory Judgment Act involves procedural remedies and not substantive rights" and thus courts are obliged to apply federal law regardless of the substantive law provisions. *Auto-Owners Ins. Co. v. Next Generation Energy, LLC*, No. 14-CV-01580-REB-KLM, 2014 WL 7251678, at *5 (D. Colo. Dec. 19, 2014); *see also Hanson v. Wyatt*, 552 F.3d 1148, 1157 (10th Cir. 2008).

joined, whether such parties are amenable to process in that proceeding, etc." *Id.* at 495.[5] The

Tenth Circuit has distilled this inquiry to five factors:

> [1] whether a declaratory action would settle the controversy; [2] whether it would
> serve a useful purpose in clarifying the legal relations at issue; [3] whether the
> declaratory remedy is being used merely for the purpose of "procedural fencing" or
> "to provide an arena for a race to res judicata "; [4] whether use of a declaratory
> action would increase friction between our federal and state courts and improperly
> encroach upon state jurisdiction; and [5] whether there is an alternative remedy
> which is better or more effective.

*Mhoon*, 31 F.3d at 983. These factors "arise largely out of consideration of whether exercising

jurisdiction in the declaratory judgment action will interfere with or be less efficacious than

resolution of the issues in a parallel proceeding." *Wingerter v. Gerber*, No. 09-CV-02000-PAB-

MEH, 2010 WL 3730899, at *2 (D. Colo. Sept. 17, 2010). Plaintiff is correct that the Canadian

Action is not exactly parallel to this action because PTW USA is not a party to the Canadian

Action, but that fact informs this analysis, it does not control. *Las Cru*ces, 289 F.3d at 1182 ("[T]he

degree of similarity should be considered in the evaluation of the *Brillhart/Mhoon* factors, rather

than considered as a threshold condition."). The court finds that there is no doubt that a second,

parallel resolution of these matters in the present declaratory judgment action is less efficacious

than resolution in the first-filed Canadian Action.

In this case, these factors weigh in favor of dismissal for the same reasons the court that

the public and private interests tipped in favor of dismissal for the *forum non conveniens* analysis.

---

[5] Although *Wilton* and *Brillhart* involved parallel state court proceedings, there is no reason to
think the standard should differ after the court has determined that the parallel foreign proceeding
provides an adequate forum in its *forum non* analysis. *See Stoncor Grp., Inc. v. Peerless Ins. Co.*,
322 F. Supp. 3d 505, 514 (S.D.N.Y. 2018); *Steamship Mut. Underwriting Ass'n Ltd. v. Osprey
Underwriting Agency Ltd.*, No. C15-43 RSM, 2015 WL 3649283, at *8 (W.D. Wash. June 11,
2015); *Eastman Kodak Co. v. Kavlin*, 978 F. Supp. 1078, 1089 (S.D. Fla. 1997).

First, there is little doubt that the Canadian Action will resolve the present matter as both actions concern the issue of Mr. Carriere's employment, alleged termination/resignation, and scope of the obligations owed under the Agreement. The difference in parties is not persuasive given that PTW Canada, the parent, and PTW USA, the subsidiary, are clearly related. [#2]. Adjudicating the present declaratory judgment action would be merely duplicative of the Canadian Action and would serve no useful purpose independent of that action. *TBL Collectibles, Inc. v. Owners Ins. Co.*, 285 F. Supp. 3d 1170, 1195 (D. Colo. 2018) ("It is also not clear that a separate adjudication of plaintiff's claim for declaratory relief would serve any useful purpose, given that the question of whether plaintiff fulfilled its duties under the insurance contract will necessarily be addressed in the Court's resolution of [the substantive claims before it]."); *Pennsylvania Manufacturers' Ass'n Ins. Co. v. Landon Transp. Logistics, LLC*, No. 14-CV-00021-RPM, 2014 WL 1455592, at *3 (D. Colo. Apr. 14, 2014) ("This federal action does not serve any additional purpose with respect to clarifying the legal relations at issue."); *Ins. Co. of State of Pa. v. Triton Dev., LLC*, No. CIV. 04-cv-1924-REB-OES, 2005 WL 2359125, at *4 (D. Colo. Sept. 26, 2005) (declining to "usurp the state court's authority" when the "key question, a question of state law, [was] pending before a state court"). Even if the actions are not perfectly parallel because the parties differ, the actions concern the same basic legal question as to Mr. Carriere.

The court finds the third element particularly salient as the timing of this action—filed shortly after the Canadian Action—is compelling evidence of a race to res judicata and procedural fencing. *Bd. of Cty. Comm'rs of Cty. of Boulder v. Rocky Mountain Christian Church*, 481 F. Supp. 2d 1181, 1188 (D. Colo. 2007) ("[I]t is clear that the declaratory action is nothing more than a procedural maneuver by the Board to seize a strategic advantage."). *Cf. EagleDirect Mktg. Sols.,*

*Inc. v. Engenus NA LLC*, No. 06-CV-01170-LTB-KLM, 2008 WL 1801168, at *2 (D. Colo. Apr. 17, 2008) (two-year gap between actions did not indicate procedural fencing). Consider the sequence of events: the email at issue which Plaintiff maintains constituted a resignation is dated February 12, 2019. [#1 at ¶ 26]. The Canadian Action was filed on March 14, 2019. [#14-1 at 6]. This action was filed May 20, 2019. [#1]. Either PTW USA filed this action three months after the date it alleges Mr. Carriere resigned and two months after the dispute boiled over into litigation, or it filed it shortly after service of process in the Canadian Action. The sequence of events indicates that Plaintiff may have brought this case in this District for reasons other than perfecting jurisdiction or its nexus to the conduct at issue.

Further, in this action Plaintiff notes that "Defendant and his counsel have demanded that its current employer, PTW, and PTW Ltd. pay in excess of $610,000 (which includes a demand for punitive and other damages)." [#1 at ¶ 33]. This figure appears to correspond with the amount demanded in the original Canadian Action pending when this action was filed, $594,031.69 USD plus unused vacation pay and includes a demand for punitive damages. [#14-1 at 19, 20]. While the court cannot conclude with certainty that Plaintiff is referring to the Canadian Action in ¶ 33, neither can the court ignore that reasonable inference. The court is further inclined to find procedural fencing because Plaintiff PTW USA has failed to notify this court of the pendency of the Canadian Action. It seems unlikely that PTW USA was unaware of the Canadian Action filed by (allegedly) its own employee against its parent corporation PTW Canada concerning the employee's performance of his duties with PTW USA. PTW USA is under an obligation under Local Rule 3.2(a) to "file a notice identifying all cases pending in this or any other federal, state, or foreign jurisdiction, that are related to the case," i.e., those cases that have "common facts and

claims" with "at least one party in common."  D.C.COLO.LCivR 3.2. The Canadian Action is a related case under Rule 3.2 and the failure to file the required notice suggests that Plaintiff is attempting to avoid scrutiny.  Regardless of motive, the temporal proximity of these cases weighs against exercising jurisdiction—the Tenth Circuit has upheld a district court's refusal to hear a declaratory judgment action even when the federal declaratory action *preceded* the parallel claim. *St. Paul Fire & Marine Ins. Co. v. Runyon*, 53 F.3d 1167, 1168 (10th Cir. 1995).

As noted above, the simultaneous adjudication of this declaratory action might invite friction between this court and the Canadian Court, and so the fourth factor weighs against exercising discretion as well.  "[A] federal court will generally not entertain jurisdiction in a declaratory action if the identical issues are involved in another pending proceeding." *Addison Ins. Co. v. Rippy*, No. CIVA.08-CV-00237-PAB-MJW, 2009 WL 723322, at *5 (D. Colo. Mar. 18, 2009) (quoting *W. Cas. & Sur. Co. v. Teel*, 391 F.2d 764, 766 (10th Cir. 1968)).  Adjudicating this matter will involve issuing orders that necessarily delay or impede the Canadian Action as the courts wrestle with preclusion implications.  *Id.* ("[A] federal district court should stay or dismiss an anticipatory declaratory judgment action which requires the court to make a factual finding that likely will be made, and will be material, in the underlying state court action.").  Canadian courts are better suited to apply Canadian law and have a greater interest in doing so as well.  Committing issues of unfamiliar law to those courts charged with administering those laws weighs this fourth factor against exercising jurisdiction.  *Mid-Continent Cas. Co. v. Vill. at Deer Creek Homeowners Ass'n, Inc.*, 685 F.3d 977, 986 (10th Cir. 2012).

Finally, the court notes that there is a readily apparent alternate remedy: proceeding in the Canadian Action which would fully dispose of the present matter.  *Hislop v. Paltar Petroleum*

*Ltd.*, No. 17-CV-02371-RBJ, 2018 WL 5014123, at *8 (D. Colo. Oct. 16, 2018) ("Having already expended judicial resources in Australia, it makes sense to keep the case in Australia."); *First Mercury Ins. Co. v. MRCO, Inc.*, No. CV 12-1057 JP/CEG, 2013 WL 12170302, at *5 (D.N.M. Mar. 21, 2013) (noting that although plaintiff was not a party to the parallel suit, it "could intervene in the state court case to ensure its claims are heard in that forum"); *Mid-Continent Cas. Co. v. Greater Midwest Builders, Ltd.*, No. 09-2066-EFM, 2011 WL 5597329, at *5 (D. Kan. Nov. 17, 2011) (holding this factor weighed against exercising jurisdiction when parallel suit would substantively resolve the issue before it). For all these reasons, the court respectfully recommends declining to exercise jurisdiction over this case under *Brillhart* in alternative to granting Defendant Martin Carriere's Motion to Dismiss for *Forum Non Conveniens*. Given statute of limitations concerns, administrative closure pending the outcome of the Canadian Action may be the most appropriate remedy. *Owners Ins. Co. v. Kasloff*, No. 17-CV-1613-WJM-STV, 2018 WL 1173151, at *5 (D. Colo. Mar. 6, 2018) (administratively closing the case for that reason).

## CONCLUSION

For the reasons stated herein, it is respectfully **RECOMMENDED** that:

1) Defendant Martin Carriere's Motion to Dismiss for *Forum Non Conveniens* [#14] be **GRANTED**, or, **in the alternative**, the court **DECLINE** jurisdiction over this case pursuant to *Brillhart*, either dismissing without prejudice or administratively closing the case pending the outcome of the Canadian Action.[6]

In addition, **IT IS ORDERED**:

2) Defendant Martin Carriere's Motion to Stay Discovery [#23] is **GRANTED**, and discovery in this matter is **STAYED** pending a ruling on the Motion to Dismiss [#14].

DATED: August 23, 2019

BY THE COURT:

Nina Y. Wang
United States Magistrate Judge

---

[6] Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for de novo review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. 2121 East 30th Street*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar de novo review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation de novo despite the lack of an objection does not preclude application of the "firm waiver rule"); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).